**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JAZZMIN DAILEY, AKA Jazziee,
*Defendant-Appellant.*

No. 18-10134

D.C. No.
2:15-cr-0226-
GMN-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted September 9, 2019
San Francisco, California

Filed November 4, 2019

Before: Ronald M. Gould, Carlos T. Bea,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Criminal Law

The panel dismissed an appeal from the district court's imposition of a probation condition requiring the defendant to register as a sex offender pursuant to the Sex Offender Notification and Registration Act, in a case in which the defendant pleaded guilty to violating the Travel Act based on an incident in which she transported a minor across state lines for the purpose of having the minor engage in prostitution.

Because the text and structure of SORNA's residual clause make it clear the clause requires the application of a non-categorical approach to determine whether a conviction is for an offense involving "any conduct that by its nature is a sex offense against a minor," the panel concluded that Department of Justice guidelines interpreting the residual clause as requiring the categorical approach are not entitled to *Chevron* deference. Because the defendant's plea agreement and plea colloquy each contained an admission that the victim was a juvenile, the panel, applying the non-categorical approach, held that it is clear that the defendant's conviction was for an offense committed "against a minor." Rejecting the defendant's argument that there is no "sex offense" where the minor never completed an act of prostitution, the panel wrote that driving a minor to Las Vegas, buying her provocative clothing, instructing her on the unwritten rules of prostitution, and renting a hotel room,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

all with the intent that the minor engage in acts of prostitution, certainly qualifies as "conduct that by its nature is a sex offense against a minor." The panel concluded that the defendant is therefore required to register as a sex offender pursuant to SORNA.

The panel rejected the defendant's argument that she did not have adequate notice before sentencing that she would be required to register, and concluded that the district court did not delegate the Article III judicial power in imposing the sentence.

Because the sentence was legally imposed, the panel concluded that the appellate waiver in the defendant's plea agreement is enforceable, and dismissed the appeal.

---

**COUNSEL**

Jaya C. Gupta (argued) and Kathleen Bliss, Kathleen Bliss Law PLLC, Henderson, California, for Defendant-Appellant.

Elham Roohani (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

BEA, Circuit Judge:

Jazzmin Dailey pleaded guilty to violating 18 U.S.C. § 1952(a)(3)(A) ("the Travel Act") based on a June 2015 incident in which Dailey transported a minor across state lines for the purpose of having the minor engage in prostitution. Dailey was sentenced to three years of probation and ordered by the district court to register as a sex offender pursuant to the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, *et seq*.

On appeal, Dailey makes three arguments challenging the legality of the condition requiring her to register as a sex offender. First, she argues the district court imposed an illegal sentence by requiring her to register as a sex offender because she was not convicted of a "sex offense." Next, she argues the district court did not provide her adequate pre-sentencing notice that she would be required to register as a sex offender under SORNA. And finally, she argues the district court delegated the Article III power to impose a criminal sentence by leaving the determination whether Dailey would be required to register as a sex offender to the probation office or state officials. For the reasons below, we reject all three arguments, conclude that the sentence was legally imposed, and dismiss the appeal based on the enforceable appellate waiver in Dailey's plea agreement.

**BACKGROUND**

Dailey and her juvenile victim, T.B., were arrested on June 16, 2015, in an area of Las Vegas known for its high prostitution activity. When asked to produce identification, T.B. told the officer that she was 16 years old, and a subsequent records check revealed that T.B. was a missing

juvenile from Chandler, Arizona. Dailey told investigators she believed T.B. was 20 years old.

T.B. later told a detective from the Child Exploitation Task Force that she had traveled from Arizona to Las Vegas to celebrate Dailey's birthday as part of a four-person group with Dailey, another woman, and a 48-year-old male. T.B. had joined the group at the invitation of the third woman, and when the other woman and T.B. went to rendezvous with Dailey, they first met the male, who told them, "I have a girl coming, she'll be the boss; she handles everything." Shortly thereafter, Dailey arrived in a rented car.

Dailey drove the group to a clothing store, where she purchased provocative, skimpy clothing for the women. While at the store, T.B. became aware that Dailey intended for T.B. to engage in prostitution once they arrived in Las Vegas. Dailey then drove the group to Las Vegas, instructing them on the unwritten rules of prostitution in the car. Among other things, Dailey instructed the women to "text a smiley face symbol to [her]" if they "[got] a trick." Dailey also rented a room at the Orleans Hotel and Casino for the women. Dailey secured a firearm in her room, and, according to T.B., Dailey told the women, "[i]f you get caught or say something about us, we'll kill you."

In August 2015, a grand jury returned an indictment against Dailey. She was charged with one count of transportation of a minor for prostitution, in violation of 18 U.S.C. § 2423(a), (e) and one count of attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and 1594(a), (b). Eventually, Dailey pleaded guilty to one count of violating the Travel Act, which criminalizes traveling in interstate commerce with the intent to commit an "unlawful activity." *See* 18 U.S.C. § 1952(a)(3). A variety of unlawful activities may trigger a

violation of the Travel Act, none of which require that the unlawful activity involve a victim of minor age. *See id.* at § 1952(b).

However, in her plea agreement and during the plea colloquy, Dailey admitted that T.B. was a juvenile and that Dailey drove T.B. from Arizona to Nevada with the intent that T.B. would engage in prostitution. Dailey further admitted that she took steps to facilitate T.B.'s prostitution by instructing her in the rules of prostitution, purchasing provocative clothing, and renting a hotel room in Las Vegas. The plea agreement contained a notice that Dailey "may be required to register as a sex offender under the laws of the state of her residence." At the change of plea hearing, the government reiterated the plea agreement's provision involving sex offender registration requirements under federal law. An additional provision in the plea agreement acknowledged that Dailey waived her right to appeal any sentence falling within the sentencing guideline range or "any other aspect of the conviction or sentence and any order of restitution or forfeiture."

After Dailey pleaded guilty, and prior to her sentencing hearing, the probation office prepared a presentence report (PSR) recommending Dailey be sentenced to 46 months imprisonment followed by three years of supervised release. The PSR also stated that while on supervised release Dailey "shall comply with . . . the following mandatory condition[]":

> 5. You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside,

work, are a student, or were convicted of a qualifying offense.

Dailey did not object to the PSR.

The district court held Dailey's sentencing hearing in March 2018. Announcing that she would "vary downward for [Dailey] and take a chance," the district judge sentenced Dailey to no imprisonment and three years of probation, citing her vulnerability, remorse, and otherwise good behavior. The district judge also stated the terms of Dailey's probation would include the "standard and mandatory conditions of probation" from the PSR. The district court's written judgment contained an identical provision to the PSR's statement that Dailey "must comply with the requirements of the Sex Offender Registration and Notification Act (SORNA) as directed by" probation or state officials. Dailey was subsequently required to register as a sex offender in her state of residence, Arizona.

Dailey now appeals her sentence, arguing the district court erroneously required her to register as a sex offender. She also argues the district court failed to provide her adequate notice of the registration requirement before it sentenced her and that the court delegated its Article III powers to probation officials. Because Dailey challenges the legality of her sentence, she further argues she is not bound by the terms of the appellate waiver in her plea agreement.

## STANDARD OF REVIEW

We review whether a defendant has waived her right to appeal de novo. *United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007).

We also review de novo "[w]hether a supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution," *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009), and the "adequacy of a district court's notice of its intent to upwardly depart" from sentencing guidelines, *United States v. Evans-Martinez*, 530 F.3d 1164, 1167 (9th Cir. 2008). When a defendant does not make a timely objection at sentencing to the adequacy of the notice, however, the claim is reviewed for plain error. *Id*. Plain error is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (citation, alteration, and internal quotation marks omitted). If those conditions are met, "an appellate court may exercise its discretion to notice a forfeited error that (4) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc) (quoting *Cotton*, 535 U.S. at 631).

A district court's imposition of probation conditions is reviewed for abuse of discretion. *See United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004).

## DISCUSSION

### A.

At the outset, the government argues Dailey's appeal is barred by the waiver in her plea agreement. There are, however, several exceptions to waivers of the right to appeal. "An appeal waiver will not apply if: 1) a defendant's guilty plea failed to comply with [Federal Rule of Criminal Procedure] 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law." *Bibler*, 495 F.3d at 624. Among

other things, a sentence that violates the law is a sentence "in excess of the permissible statutory penalty for the crime," *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986), a category that includes unlawful probation conditions. *See Watson*, 582 F.3d at 987 (analyzing an allegedly unlawful condition of supervised release despite defendant's appellate waiver).

Because the only potentially applicable exception here is that her "sentence violates the law" by imposing an unlawful probation condition, Dailey's claim as to waiver rises and falls with her claim on the merits. If she is correct that her sentence violates the law, then her waiver is unenforceable. If she is incorrect, she has waived her right to appeal. Thus, we turn to the merits of her appeal to determine whether the waiver may be enforced.

## B.

Dailey's primary argument is that she was wrongly required to register under SORNA because her conviction for violating the Travel Act did not constitute a "sex offense" as defined in 34 U.S.C. § 20911 (formerly 42 U.S.C. § 16911).[1] She is incorrect.

SORNA did not create new substantive criminal law but instead "establish[ed] a comprehensive national system for the registration" of "sex offenders and offenders against children." 34 U.S.C. § 20901. Defendants are not directly convicted of violating SORNA. Rather, the law applies to

---

[1] SORNA was moved from Title 42 of the United States Code and re-codified without amendment at 34 U.S.C. § 20901, *et seq.*, in 2017. There have been no relevant, substantive changes in the law since Dailey's Travel Act violation in 2015, and we therefore cite to SORNA as it is presently codified.

violations of existing state and federal criminal laws and mandates the registration of a "sex offender" "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913.

The determination whether someone is a "sex offender" who is required to register is controlled by a series of statutory definitions in Section 20911. According to Section 20911(1), the term "sex offender" means "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). A "sex offense," in turn, is defined in Section 20911(5)(A) as "a criminal offense that has an element involving a sexual act or sexual contact with another," 34 U.S.C. § 20911(5)(A)(i), or "a criminal offense that is a specified offense against a minor," 34 U.S.C. § 20911(5)(A)(ii).[2] The term "specified offense against a minor" is defined in Section 20911(7), which states the phrase "means an offense against a minor that involves any of the following":

> (A) An offense (unless committed by a parent or guardian) involving kidnapping.

> (B) An offense (unless committed by a parent or guardian) involving false imprisonment.

> (C) Solicitation to engage in sexual conduct.

> (D) Use in a sexual performance.

---

[2] Section 20911(5)(A) also includes several enumerated federal offenses, certain "military offense[s]," and the "attempt or conspiracy to commit" a sex offense. 34 U.S.C. § 20911(5)(A)(iii)–(v).

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in section 1801 of Title 18.

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I) Any conduct that by its nature is a sex offense against a minor.

34 U.S.C. § 20911(7).

Dailey argues that her Travel Act conviction was not for a "sex offense" requiring registration under SORNA because it contained neither "an element involving a sexual act or sexual contact with another," nor was it "a specified offense against a minor." *See* 34 U.S.C. § 20911(5)(A)(i)–(ii). The government argues only that Dailey committed a specified offense against a minor involving "conduct that by its nature is a sex offense against a minor," as described in Section 20911(7)(I)—a provision known as SORNA's "residual clause."[3]

---

[3] At oral argument the government conceded that the record in this case does not support a finding that Dailey was convicted of an offense that involved soliciting a minor to practice prostitution, which would qualify as a sex offense under Section 20911(7)(E). Because the government does not argue Dailey's Travel Act violation had "an element involving a sexual act or sexual contact with another" or qualified as any of specifically defined "specified offense[s] against a

Dailey pleaded guilty to a single count of violating the Travel Act, specifically to violating 18 U.S.C. § 1952(a)(3). The elements of a violation of Section 1952(a)(3) are that a person (1) travel in interstate commerce (or use the mail in interstate commerce), (2) while possessing intent to facilitate or engage in an "unlawful activity." 18 U.S.C. § 1952 (a)(3). An "unlawful activity" for Travel Act purposes is defined to include "prostitution offenses in violation of the laws of the State in which they are committed." *Id.* at § 1952(b). A Travel Act violation does not contain an element that the offense be committed against a minor. Indeed, a Travel Act violation does not necessarily require that a victim even exist. Here, however, Dailey admitted to more than the minimum conduct required for a Travel Act violation. Her plea agreement and plea colloquy contained these key admissions: (1) Dailey transported T.B. from Arizona to Nevada with the intent that T.B. would engage in prostitution; (2) Dailey took additional, affirmative steps to facilitate T.B.'s prostitution, including instructing her in the rules of prostitution, renting a hotel room, and buying provocative clothing for T.B. to wear; and (3) T.B. was a minor.[4] Only the first of these admissions was necessary to secure a Travel Act conviction.

Appealing the district court's order that she register as a sex offender, Dailey argues that the residual clause applies only to "convictions under statutes defining sexual offenses *in which the status of the victim as a minor is an element of an offense*." *See* Office of the Attorney General, The National Guidelines for Sex Offender Registration and

_____

minor" in Section 20911(7)(A)–(H), we do not address Dailey's arguments on these matters.

[4] Dailey did not admit to knowing that T.B. was a minor.

Notification, 73 Fed. Reg. 38030, 38052 (July 2, 2008) (hereinafter "SMART guidelines") (emphasis added). Because the Travel Act contains no such element, she asks us to apply the "categorical approach" and hold she was not convicted of a "sex offense." *Cf. Descamps v. United States*, 570 U.S. 254, 261 (2013) ("The key [to the categorical approach] . . . is elements, not facts."). The alternative method for determining whether a conviction is for a "sex offense" as defined by the residual clause, which we call the non-categorical approach, is to examine not just the elements of the crime but also "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *See Shepard v. United States*, 544 U.S. 13, 16 (2005).

This is not the first time we have been asked to apply the categorical approach to SORNA's residual clause. In *United States v. Byun* we declined to do so because the "best reading of [SORNA's] statutory structure and language is that Congress contemplated a non-categorical approach as to the age of the victim in determining whether a particular conviction is for a 'specified offense against a minor.'" 539 F.3d 982, 992 (9th Cir. 2008). However, since *Byun* was decided, the Department of Justice issued guidelines interpreting the residual clause as requiring the categorical approach,[5] and we must decide whether these guidelines are entitled to deference under *Chevron v. National Resource Defense Council*. 467 U.S. 837 (1984); *see also Nat'l Cable*

---

[5] *Byun* was decided on July 1, 2008. The SMART guidelines were published in the Federal Register on July 2, 2008. *Byun* was amended on August 24, 2008, to make changes to the caption, but the analysis remained unchanged. The parties here agree that we should treat Byun as having been decided before the SMART guidelines were published.

*& Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

In *Byun*, a nightclub owner in Guam pleaded guilty to three counts of alien smuggling, a violation of 8 U.S.C. §§ 1324 and 1328, and in her plea agreement admitted to inducing an employee to come to Guam with the intent that the employee "perform sexual acts for money." 539 F.3d. at 984. Byun also acknowledged that she "knew [the employee] was seventeen years old" at the time. *Id.* The issue in *Byun* was nearly identical to the issue here: The crimes to which Byun pleaded guilty required proof that she "imported the alien for the purpose of having him or her engage in prostitution or for some other immoral purpose," but they did not require proof that Byun's victim was a minor. *Id.* at 987. Thus, applying a non-categorical approach to the residual clause, Byun was required to register as a sex offender, but under a categorial approach she would not have been.

In determining the residual clause called for a non-categorical approach, we looked to three aspects of the law. First, while Section 20911(5)(A)(i) defines a sex offense as "a criminal offense that has an *element* involving a sexual act or sexual contact with another," Section 20911(5)(A)(ii), which alternatively defines a sex offense as "a criminal offense that is a specified offense against a minor," "contains no reference to the crime's 'elements.'" *See id.* at 992. Second, in Section 20911(7), which defines "a specified offense against a minor," the words "against a minor" precede a general list of crimes—e.g., "kidnapping," "false imprisonment," and "[u]se in a sexual performance"—that do not reference the victim's identity, suggesting, for example, that "*any* kidnapping offense becomes a 'specified offense against a minor' when the victim is a minor." *Id.*

Finally, and most pointedly, the residual clause covers "any *conduct* that by its nature is a sex offense against a minor." 34 U.S.C. § 20911 (emphasis added). The use of "conduct" in the residual clause, as opposed to "conviction," strongly indicates a non-categorical approach applies. *Byun*, 539 F.3d at 992; *cf. Taylor v. United States*, 495 U.S. 575, 600 (1990) (use of "convicted" rather than "committed" in a statute shows Congressional intent for application of the categorical approach).

However, against these three strong indicators that the residual clause calls for a non-categorical approach, we did note there exists "a modicum of ambiguity" created by Section 20911(1), which defines a sex offender as someone who has been "convicted" of a sex offense. *Byun*, 539 F.3d at 992. But this slight amount of ambiguity was not enough to alter the conclusion that our "best reading of the statutory structure and language" required the use of a non-categorical approach. *Id.*

In asking us to reach an opposite conclusion now, Dailey argues that we must defer to the SMART guidelines, which were adopted by the Attorney General pursuant to Congressional authorization to "issue guidelines and regulations to interpret and implement" SORNA. 34 U.S.C. § 20912. The guidelines call for use of the categorical approach when determining whether a crime is a "sex offense" under the residual clause:

> The [residual] clause covers "[a]ny conduct that by its nature is a sex offense against a minor." It is intended to ensure coverage of convictions under statutes defining sexual offenses in which *the status of the victim as a minor is an element of an offense*, such as specially defined child molestation or child

> prostitution offenses, and other offenses prohibiting sexual activity with underage persons.

73 Fed. Reg. at 38052 (emphasis added). If the SMART guidelines dictate how we are to interpret the residual clause, then Dailey is correct that her Travel Act conviction is not a sex offense, because "the status of the victim as a minor" is not an element of a Travel Act violation. *See* 18 U.S.C. § 1952(a)–(b).

However, we do not reflexively defer in the interpretation of a statute when an agency has issued guidelines. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. To determine whether a statute is clear, a court must employ all the "traditional tools of statutory construction." *Id.* at 843 n.9. And, only when these tools do not reveal a clear right answer to the "precise question at issue," may courts defer to reasonable agency interpretations of statutes. *Id.* at 843.

Dailey makes two arguments that SORNA is "silent or ambiguous with respect to the specific issue" whether the categorical approach applies to the residual clause, which could require us to defer to the SMART guidelines. *See id.* First, she points to the definition of "sex offender" in Section 20911(1) as requiring someone be "*convicted* of a sex offense." This is the same provision in *Byun* that we noted created a "modicum of ambiguity." 539 F.3d at 992. Second, she argues that the definitions in Section 20911 circularly define a "sex offense" as it relates to the residual clause, creating an inherent ambiguity. *See* 34 U.S.C. § 20911(1), (7)(I). Neither of these arguments, however, convinces us

that "Congress has not directly addressed the precise question." *Chevron*, 476 U.S. at 843.

Insofar as Dailey argues our decision in *Byun* requires us to find the residual clause ambiguous, such that *Chevron* deference is warranted, Dailey is mistaken. While *Byun* noted "a modicum of ambiguity" on the issue, this reflected the thoroughness of the analysis and the opinion's engagement with both sides of an argument, not a broader holding that the residual clause is inherently ambiguous about whether to apply the categorical approach. *See* 539 F.3d at 992. *Byun* stated the "best reading" of the statute was to apply a non-categorical approach to the residual clause, but because we were not asked to address the applicability of the SMART guidelines, we were not required to hold conclusively that the residual clause unambiguously calls for the non-categorical approach. *Id.*; *see also Brand X Internet Servs.*, 545 U.S. at 982. Now, faced with the question whether the only acceptable interpretation of the residual clause is to apply a non-categorical approach regarding the age of the victim, we hold that it is.

The reasons for this holding are the same as they were in *Byun*—the statutory text and structure are clear. In the statute are three provisions that strongly suggest a non-categorical approach—the lack of a reference to the crime's "elements" in Section 20911(5)(A)(ii), the words "against a minor" preceding the general list of crimes in Section 20911(7), and, most importantly, the word "conduct" in the residual clause itself—and only one provision that may suggest otherwise— the word "conviction" in Section 20911(1). The residual clause, its parent section, *and* Section 20911(5)(A)(ii) "point[] *strongly* toward a non-categorical approach with regard to the age of the victim," *Byun*, 539 F.3d at 991

(emphasis added), and the only provision that may suggest otherwise, Section 20911(1), is the furthest in proximity from the residual clause itself. To the degree that any ambiguity exists in the statute, it is exceedingly slight and is resolved conclusively in favor of the non-categorical approach using the "traditional tools of statutory construction." *Chevron*, 467 U.S. at 843 n.9.[6]

Because Dailey's plea agreement and plea colloquy each contained an admission that T.B. was a juvenile, applying the non-categorical approach, it is clear Dailey's conviction was for an offense committed "against a minor."

Finally, Dailey argues, even if we apply a non-categorical approach to the residual clause, her violation of the Travel Act did not involve "conduct that by its nature is a sex offense." *See* 34 U.S.C. § 20911(7)(I). Her argument is there was no "sex offense" because T.B. never completed an act of prostitution. But, tellingly, most of the specifically enumerated "specified offenses against a minor" in Section 20911(7)(A)–(H) do not require actual sexual contact yet still qualify as "sex offenses." Driving a minor to Las Vegas, buying her provocative clothing, instructing her on the unwritten rules of prostitution, and renting a hotel room, all with the intent that the minor engage in acts of prostitution, certainly qualifies as "conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I).

---

[6] We also note that other circuit courts that have addressed this question have arrived at the same conclusion. *See United States v. Hill*, 820 F.3d 1003, 1006 (8th Cir. 2016); *United States v. Price*, 777 F.3d 700, 709 n.9 (4th Cir. 2015); *cf. United States v. Schofield*, 802 F.3d 722, 730–31 (5th Cir. 2015) (finding the residual clause unambiguous but not resolving whether a non-categorical approach applies).

This conclusion is strengthened by our holding in *Byun*, where, similarly, transportation of a minor with the intent the minor engage in prostitution was a "sex offense," even in the absence of an act of actual prostitution. *Byun*, 539 F.3d at 988 ("As a common sense matter, transporting a minor to the United States with the intent that she engage in prostitution is no less 'conduct that by its nature is a sex offense against a minor' than is soliciting a minor to the same end.").

## C.

Next, Dailey argues that the district court committed plain error by failing to provide her adequate notice before imposing SORNA registration as a probation condition. She is mistaken.

The Federal Rules of Criminal Procedure require district courts to allow attorneys to "comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). Additionally, the Supreme Court has held Rule 32 requires "the district court [to] give the parties reasonable notice" before departing upward on a ground not identified "in the presentence report or in a prehearing submission." *Burns v. United States*, 501 U.S. 129, 138 (1991). And, "[w]here a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed." *United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004).

Here, Dailey's argument fails for simple and obvious reasons—SORNA registration was discussed in her plea agreement, at her change of plea hearing, and as a "mandatory condition" in the presentence report. Dailey had adequate notice she may have been required to register under

SORNA because "the record suggested the condition as a possibility before it was imposed." *Id.* at 1032.

Moreover, unlike the challenged probation condition in *Wise*, Dailey complains of a mandatory condition of probation. *See* 18 U.S.C. § 3563(a)(8). Because of the facts set forth in Dailey's plea agreement and plea colloquy, the district court was obligated to impose the sex offender registration requirement. Therefore, any deficiency in the notice provided to Dailey that federal law requires her to register as a sex offender did not affect Dailey's "substantial rights" or "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings" and was not plain error. *Cotton*, 535 U.S. at 631.

### D.

Dailey's final argument is that the district court impermissibly delegated its Article III power and responsibility to impose a criminal sentence by leaving the determination of whether she must register as a sex offender to probation and state officials. She is wrong.

"[A] probation officer may not decide the nature or extent of the punishment imposed upon a probationer." *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005) (citation omitted). A district court may delegate "the details of where and when the condition will be satisfied," but it alone must "make[] the determination of *whether* a defendant must abide by a condition." *Id.* at 880. This is because, under the Constitution, the power to punish is exclusively judicial. *See id.* at 881 (citing *Ex parte United States*, 242 U.S. 27, 41–42 (1916)). Indeed, SORNA creates a mandatory condition of probation but nonetheless requires a sentencing court to impose compliance as "an *explicit*

*condition* of a sentence of probation." 18 U.S.C. § 3563(a) (emphasis added).

In *Stephens*, we addressed whether a district court ordering an offender "shall comply" with conditions of release "as directed by the probation officer" constitutes a "delegation of Article III judicial power," and we held that it does not. 424 F.3d at 882. This is because when the court uses mandatory language such as "shall comply" regarding probation conditions, the court has already "answered the question of *whether*" the probation condition is required. *Id.* All that is left for the probation officer is "the ministerial task[] of choosing the appropriate" method for *how* the offender will comply with the court's condition. *See id.*

The district court's written judgment ordered that Dailey "*must comply* with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency . . . ." The court clearly directed Dailey to register as a sex offender under SORNA. That federal probation officers or the local sheriff may later tell Dailey how to register properly in a given location is not a delegation of the Article III judicial power.

## CONCLUSION

The text and structure of SORNA's residual clause make it clear the clause requires the application of a non-categorical approach to determine whether a conviction is for an offense involving "any conduct that by its nature is a sex offense against a minor." The record supports the district court's determination that Dailey committed a "sex offense" as defined by SORNA, and therefore she is required to register as a sex offender pursuant to that law. Dailey had

adequate notice before her sentencing that she would be required to register, and the court did not delegate the Article III judicial power in imposing the sentence. Dailey's sentence was legally imposed, and the appellate waiver in her plea agreement is enforceable. For these reasons the decision of the district court is

**DISMISSED.**